UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| CATHY COLYER, | ) |
|  | ) |
|  | ) Civil No. 12-47-GFVT |
| Plaintiff, | ) |
|  | ) |
| v. | ) **MEMORANDUM OPINION AND** |
|  | ) **ORDER** |
| SPEEDWAY, LLC, and | ) |
| SPEEDWAY SUPERAMERICA, LLC, | ) |
|  | ) |
| Defendants. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

While walking down an aisle in a gas station, Plaintiff Cathy Colyer tripped on a cardboard box that was sitting on the floor. Although she did not fall down, Colyer injured her shoulder when she caught herself on a nearby ATM machine and later brought suit for damages. This matter is before the Court upon the Motion for Summary Judgment filed by Defendants Speedway, LLC and Speedway Superamerica, LLC (collectively "Speedway"). [R. 17.] Because there is no genuine issue of material fact as to Speedway's liability, its motion will be GRANTED.

**I**

On the evening of September 30, 2010, between 9:45 and 10:00 p.m., Plaintiff Cathy Colyer stopped at a Speedway gas station in Somerset, Kentucky, on her way home from playing bingo. [R. 17-1 at 2; Colyer Depo. at 43.] Colyer testified that the weather was clear and "pretty" when she entered the store to purchase a 2-liter bottle of Mountain Dew for her son. [R. 17-1 at 2; Colyer Depo. at 43, 47.] Store employee

Audrey Hargis testified that the Speedway store had just received a shipment of merchandise a few minutes before Colyer arrived, and that the employees were in the process of unpacking the boxes and re-stocking the shelves. [R. 17-1 at 2; Hargis Depo. at 7-8.] Colyer admitted that she noticed the presence of the cardboard boxes in the store, and then walked down an aisle toward the location of the 2-liters in the back corner. Colyer Depo at 61. After selecting a 2-liter of Mountain Dew, Colyer went back up the aisle toward the cash register.[1] *Id*. at 57-58. Colyer testified that although she saw a cardboard box sitting in the aisle that she walked down, she attempted to walk around the box by maneuvering to the left side of the aisle. *Id*. at 73, 81-82. As she passed the cardboard box, Colyer's leg hit the box, causing her to lose her balance and stumble. *Id*. at 64. Colyer caught herself on a nearby ATM machine, which she hit with her hand and possibly her right arm, but she did not fall to the ground or drop the Mountain Dew. *Id*. at 66-69. Colyer testified that neither the ATM machine, the box, nor anything else moved significantly when she tripped. *Id*. at 68.

Colyer described the box as being about eighteen inches wide and "maybe a foot tall" or less, to the best of her recollection. *Id*. at 59. She conceded that when she was walking back toward the register, she clearly saw the box as she was approaching it, and that nothing blocked her view of the ground or of her feet while she was walking. *Id*. at 62-63. Colyer also testified that there were multiple paths back to the cash register, but

---

[1] Colyer first testified that she went up a different aisle to the cash register than the one she had first gone down to get the soda, but after seeing surveillance photos from the store, Colyer changed her testimony to admit that she walked back up the same aisle to the register that she had used when going toward the 2-liter display, thus indicating that she had walked by the cardboard box successfully the first time. [R. 17-1 at 2; Colyer Depo. at 99-101.]

2

that other boxes besides the one she tripped over were in the other aisles as well. *Id*. at 60-61.

After regaining her composure, Colyer proceeded to the cash register to purchase the Mountain Dew and told the employee at the register that she had tripped on the box and that the boxes in the store were dangerous. *Id*. at 70-72. Colyer did not tell anyone she was injured because she did not think she was hurt until after she had left the store. *Id*. at 70-72. Upon leaving the store, Colyer drove herself to her son's house to drop off his Mountain Dew and then drove to her own house. *Id*. at 73. Later that night, Colyer began to experience pain in her shoulder. *Id*. at 74-75. She went to a doctor the next day, had several tests done, and continued to have shoulder and neck pain. *Id*. at 74-77. According to her deposition testimony, Colyer ultimately had surgery on her shoulder and on her neck, but she could not recall what kind of surgeries they were. *Id*. at 85-88.

Colyer does not dispute any of these facts, but she asserts that an additional important fact is that the store was cluttered with boxes "thru [sic] out the store."[2] [R. 19 at 3.] The Court notes, however, that Speedway objects to this characterization of the store because the evidence in the record does not support that description. [R. 22 at 7.] The Court agrees with Speedway that describing the store as being cluttered with boxes everywhere is inaccurate, given the situation of unpacking new merchandise, and that the deposition testimony and pictures submitted to the Court do not support Colyer's description of the store.

---

[2] The Court notes that Colyer's counsel spelled the word "through" as "thru" four different times in his brief. Counsel should be advised that shorthand commonly used for texting is inappropriate for briefs filed in federal court.

3

This action is in federal court on the basis of diversity jurisdiction, 28 U.S.C. § 1332. Ms. Colyer is a resident of Kentucky, and Speedway is an LLC organized under the laws of the state of Delaware. [R. 1 at 2.] Speedway, LLC, has only one member, Marathon Petroleum Corporation ("MPC") Investment LLC, which is a Delaware corporation with its principal place of business in Ohio. Thus, complete diversity exists among the parties. Colyer has not set forth a specific amount of damages, but on January 4, 2012, as part of the discovery process, Speedway served Colyer with an Interrogatory asking about the amount in controversy and asking Colyer to sign a stipulation that her damages did not exceed $75,000. [R. 1 at 2.] Colyer did not respond to the Interrogatory. Speedway has also served Requests for Admissions, seeking an admission from Ms. Colyer that her damages exceed $75,000, but Colyer never responded to that request either, and therefore her lack of response is deemed an admission under Fed. R. Civ. P. 36 (a)(3) and (b). Because Kentucky is the forum state, its substantive law will be used. *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 526 (6th Cir. 2006). However, federal procedural law will govern as applicable, including in establishing the appropriate summary judgment standard. *Weaver v. Caldwell Tanks, Inc.*, 190 F. App'x 404, 408 (6th Cir. 2006).

## II

### A

Summary judgment is appropriate when "the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

4

56(c)(2); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986). "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'" *Olinger v. Corp. of the President of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Stated otherwise, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

   The moving party has the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). The movant may satisfy its burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. Once the movant has satisfied this burden, the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate there is a genuine issue. *Hall Holding*, 285 F.3d at 424 (citing *Celotex Corp.*, 477 U.S. at 324). In applying the summary judgment standard, the Court must review the facts and draw all reasonable inferences in favor of the non-moving party. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001) (citing *Anderson*, 477 U.S. at 255). Yet even when construing the evidence in the light most favorable to the non-moving party, the non-moving party still "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushitu Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Rather, the Federal

5

Rules of Civil Procedure require the non-moving party to present "specific facts showing that there is a genuine issue for trial." *Id*. (citing Fed. R. Civ. P. 56(e)).

**B**

The Defendant Speedway has moved for summary judgment, arguing that Speedway had no duty to warn Colyer of the cardboard box because it was an open and obvious condition that Colyer admitted to have seen. Further, Speedway contends that *Kentucky River Medical Center v. McIntosh*, 319 S.W.3d 385, has not made the open and obvious doctrine inapplicable; but rather that *McIntosh* set out three narrow exceptions to the open and obvious doctrine, none of which fit Ms. Colyer's situation. [R. 17 at 5-7, 9-12]. In response to Speedway's arguments, Colyer claims that the *McIntosh* case did not set out three narrow exceptions to the open and obvious doctrine, but merely described three *examples* of situations in which it would be foreseeable to the premises owner that an invitee would get hurt. [R. 19 at 5-6]. Colyer also argues that despite her awareness of the cardboard box, the fact that such boxes were on the floor constitutes an unreasonable danger which Speedway should have foreseen could cause injury to invitees. [R. 19 at 7]. Therefore, Colyer argues that whether her injury was foreseeable constitutes a disputed fact that should be decided by a jury rather than by summary judgment.[3] [R. 19 at 7-8].

Ms. Colyer's claim is based on premises liability law, which is a sub-category of general negligence law. In order to state a claim for negligence, Colyer must establish

---

[3] The Court notes that it is somewhat difficult to ascertain Colyer's exact line of argument because the brief filed on Colyer's behalf contains so many grammatical, punctuation, spelling, and citation errors. This summary of Colyer's argument, therefore, is the Court's best attempt at determining her position.

6

that Speedway 1) owed her a duty, 2) breached that duty, 3) and that the alleged breach was the legal cause of her injury. *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88-89 (Ky. 2003); *Mullins v. Commonwealth Life Ins. Co*., 839 S.W.2d 245, 247 (Ky. 1992). The parties' arguments concerning the summary judgment motion in this case focus primarily on the duty element.[4] Whether a duty exists is "a question of law to be decided by the court." *Spears v. Schneider*, 2013 WL 3480315, at *2 (Ky. Ct. App. July 12, 2013) (citing *Pathways*, 113 S.W.3d at 89). Under Kentucky premises liability law, when the public is invited to visit a property, the owner of the property "'has a general duty to exercise ordinary care to keep the premises in a reasonably safe condition and warn invitees of dangers that are latent, unknown, or not obvious.'" *Lucas v. Gateway Community Servs. Org.,* 343 S.W.3d 341, 343 (Ky. App. 2011) (quoting *Lewis v. B & R Corp*., 56 S.W.3d 432, 438 (Ky. App. 2001)). The type of duty owed depends in part on the status of the person coming onto the premises. *Miracle v. Wal-Mart Stores East, LP*, 659 F. Supp. 2d 821, 825 (E.D. Ky. 2009). In this case, as a customer, Ms. Colyer clearly entered the premises as an invitee. Speedway owned the property and therefore owed a duty to all invitees to exercise ordinary care to maintain its store in a reasonably safe condition. *Lucas*, 343 S.W.3d at 343.

An exception to this general rule is that the owner of the premises does not have a duty to warn invitees of open and obvious conditions of which a reasonable person would be aware. *Horne v. Precision Cars of Lexington, Inc.*, 170 S.W. 3d 364, 368-69 (Ky.

---

[4] The Court notes that the parties do not present any evidence concerning Colyer's injuries other than her statements in the deposition testimony, nor do the parties engage in any argument concerning the causation and injury elements of Colyer's negligence claim. However, the Court, and apparently the parties, believe this case can be resolved on the duty element without reaching causation or injury.

2005) (citing *Bonn v. Sears, Roebuck & Co.*, 440 S.W.2d 526, 528 (Ky. 1969) ("Reasonable care on the part of the possessor of business premises does not ordinarily require precaution or even warning against dangers that are known to the visitor or so obvious to him that he may be expected to discover them.")); *see also Lanier v. Wal-Mart Stores, Inc.*, 99 S.W.3d 431, 437 (Ky. 2003) (stating that the owner "is not an insurer against all accidents on the premises") (citation omitted). At issue in this case is whether Speedway owed Ms. Colyer a heightened duty to warn or otherwise protect her from tripping over the cardboard box.

As an initial matter, the Court recognizes that in 2010, the Kentucky Supreme Court modified Kentucky's doctrine on open and obvious dangers in *Kentucky River Medical Center v. McIntosh*, 319 S.W.3d 385, but the doctrine has not been abrogated entirely. *Roberts v. Jewish Hosp., Inc.*, 2013 WL 5048294, at *5 (Ky. Ct. App. Sept. 13, 2013); *Shelton v. Kentucky Easter Seals Soc., Inc.*, 2011 WL 2496182, at *2 (Ky. Ct. App. June 24, 2011); *see also Lucas*, 343 S.W.3d at 344-46 (recognizing that *McIntosh* altered the traditional application of the open and obvious doctrine but still granting summary judgment to defendant because the hazardous condition at issue was sufficiently obvious to plaintiff that defendant had no duty to warn or correct the condition). In this case, Speedway is correct in asserting that Kentucky law still recognizes that land owners "cannot be held liable to invitees who are injured by open and obvious dangers." *Spears*, 2013 WL 3480315, at *2 (quoting *McIntosh*, 319 S.W.3d at 388). However, *McIntosh* has altered the open and obvious doctrine by introducing a two-part inquiry, as expressed in the Restatement (Second) of Torts, that is more

compatible with the modern approach of assessing comparative fault instead of contributory negligence. *Kentucky River Medical Center v. McIntosh*, 319 S.W.3d 385, 389 (Ky. 2010); *Lucas*, 343 S.W.3d at 344; *Spears*, 2013 WL 3480315, at *3. Under this modified approach, Kentucky courts must determine: 1) whether the hazard at issue was open and obvious; and, if so, 2) whether the owner of the premises could have reasonably foreseen that an invitee would be injured by the dangerous condition. *Key v. United States*, 2013 WL 1411217, at *4 (W.D. Ky. Apr. 8, 2013); *Spears*, 2013 WL 3480315, at *3. In other words, *McIntosh* did not eliminate the open and obvious doctrine, but it did introduce an additional determination of whether the plaintiff's injury was reasonably foreseeable despite the condition's open and obvious nature. *Moore v. St. Joseph Health System, Inc.*, 2012 WL 1886660, at *3 (Ky. Ct. App. May 25, 2012).

In the case at hand, the disagreement between the parties centers on their differing interpretations of *McIntosh*. In that case, McIntosh was a paramedic who tripped on an unmarked curb and fell outside the entrance to an emergency room while she was transporting a critically ill patient to a hospital. *McIntosh*, 319 S.W.3d at 387. Although McIntosh was aware of the structure of the curb and had crossed it multiple times before without incident, the Kentucky Supreme Court held that McIntosh's injury was foreseeable because the hospital had good reason to expect that paramedics would likely be distracted by emergency situations and the need to focus on their patients such that they would not pay close attention to the condition of the curb. *Id*. at 393-94. Because it was reasonable to expect that paramedics entering the emergency room with patients would involve stressful situations, it was likely that they might forget about the curb even

9

if they were previously aware of its condition. *Id.* Given the facts of that case, the court emphasized that courts in Kentucky should no longer view an open and obvious danger as a complete bar to a plaintiff's recovery, but should instead focus on the foreseeability of the plaintiff's injury. *Id.* at 392.

In determining the duty of a premises owner, the *McIntosh* court specifically adopted the position of the Restatement (Second) of Torts in support of this position as follows:

> A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge.

*Id.* at 389 (quoting Restatement (Second) of Torts § 343A(1) (1965)). The court went on to stress that this approach is consistent with Kentucky's traditional focus on foreseeability by saying that "'[t]he most important factor in determining whether a duty exists is foreseeability.'" *Id.* at 390 (quoting *Pathways*, 113 S.W.3d at 89).

However, the *McIntosh* court also emphasized that its holding did not abolish the open and obvious doctrine as a defense to landowners, nor did it completely eliminate any comparative fault which a plaintiff might have. According to the Kentucky Supreme Court,

> [w]hile 'open and obvious danger' is no longer a complete defense under the Restatement, it is nonetheless a heightened type of danger which places a higher duty on the plaintiff to look out for his own safety. Such a

> condition, being open and obvious, should usually be noticed by a plaintiff who is paying reasonable attention. Yet the plaintiff is not completely without a defense to this: there could be foreseeable distraction, or the intervention of a third party pushing the plaintiff into the danger, for example.

*Id*. at 392. Thus, the holding in *McIntosh* prevents premises owners from using the open and obvious doctrine as a complete defense and makes available to plaintiffs "the defense of foreseeable distraction" in certain situations. *Id*. at 394.

### 1

In light of the framework required by *McIntosh*, the Court must first address whether the presence of the cardboard box was an open and obvious condition. A condition is obvious if "both the condition and the risk are apparent to . . . a reasonable man in the position of the visitor exercising ordinary perception, intelligence, and judgment." *Lucas*, 343 S.W.3d at 345 (citing *Bonn v. Sears Roebuck & Co*., 440 S.W.2d 526, 529 (Ky. 1969)). Based on the testimony and the attached exhibits and pictures in the case at hand, the presence of the cardboard box sitting in the aisle was open and obvious. Ms. Colyer testified that she clearly saw the box in the aisle, and that nothing was obstructing her view of the ground, her feet, or the position of the box. Colyer Depo. at 62-63. She further conceded that she could see the box from several steps away. *Id*. at 62. She also admitted that there were alternative routes to the cash register, but that she chose to walk down that particular aisle anyway. *Id*. at 60. Colyer testified that the floor around the box was not wet or slippery, *id*. at 6; and she admitted that because nothing

else was blocking her path, she concluded that she was able to walk down the aisle despite the box's presence. *Id*. at 73. Thus, there is nothing about the cardboard box that was a hidden or latent danger, and Colyer was not unaware of the risk of tripping.

Colyer does not dispute these facts, but merely asserts "that there where [sic] boxes thru [sic] out [sic] the store, not just where Mrs. Colyer fell. The store was cluttered with boxes." [R. 19 at 3.] As support for this characterization of the store's allegedly dangerous condition, Colyer asserts that "thru [sic] her testimony and store manager, Mike Elliott, and, [sic] store employee, Audrey Hargis established [sic]" that boxes were scattered all over the floor.[5] [R. 19 at 3.] However, Colyer has not established this fact. The deposition of store employee Audrey Hargis merely represents that at least one box was stacked on top of some Pepsi crates, but that it was "not actually in [sic] the floor." Hargis Depo. at 25-26. The pictures referenced in Colyer's brief do not show that the store, or even the area Colyer was walking, was "cluttered" with boxes. *See* Elliott exhibits 4, 9, 10, 11, 12, and 13.[6] Furthermore, Colyer's deposition testimony does not say how many boxes there were, or where they were, and her testimony indicates that there was only one box in the aisle she walked down. Colyer Depo. at 112. Consequently, Colyer's unsupported assertion that the store was "cluttered" does not

---

[5] Once again, Colyer's counsel is reminded that he should at least make a pretense of having proofread his documents before filing them in federal court. The Court was hesitant to even cite to Colyer's brief here, given the poor quality of counsel's writing.

[6] The Court notes that Colyer has not provided any explanation about these pictures, the context in which they were taken, or the identity of the people in the pictures. The brief filed on behalf of Colyer merely cites generally to the pictures as support for her assertion that "the store was cluttered with boxes." [R. 19 at 3.] The pictures, however, are so limited that they do not provide evidence of the store being filled with boxes in an unreasonably dangerous manner.

create a genuine issue of material fact on the question of whether the box was an open and obvious danger.

Additionally, Colyer has not presented any evidence that the lighting was poor, that she was in a hurry, or that anything prevented her from seeing the box on the floor. Colyer clearly was aware of the box's presence, and she apparently maneuvered around the box successfully the first time she went down the aisle, *see* Colyer Depo. at 100-01, which demonstrates she was also aware of the risk of tripping but chose to step around the box anyway. Thus, the Court finds that there is no factual dispute as to whether the box presented an open and obvious danger.

**2**

Colyer's response to Speedway's motion instead focuses on whether her injury was foreseeable. In light of *McIntosh's* warning against simply labeling a condition as obvious and precluding liability, the Court will next consider whether Colyer's injury was foreseeable despite the obvious nature of the box's placement.

Speedway interprets *McIntosh* as setting out three narrow exceptions to the open and obvious doctrine based on the court's extensive quotations from the Restatement, particularly the part which states that an injury may be foreseeable when the owner of the premises: 1) "has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious"; or 2) when the invitee's distraction will cause him to forget a danger previously discovered; or 3) when it is foreseeable that the invitee will choose to encounter "the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk." [R. 17 at 7-8

13

(quoting Restatement (Second) of Torts § 343(A)(1) and *McIntosh*, 319 S.W.3d at 391, 393-94)]. According to Speedway, because Colyer's situation does not fit these three exceptions, Speedway is not liable. Colyer, however, argues that these three situations listed in *McIntosh* are merely three *examples* of many possible situations in which the open and obvious doctrine does not apply as a bar to a plaintiff's recovery. [R. 19 at 6].

Given the language of *McIntosh* and subsequent caselaw interpreting it, the Court is inclined to think that neither party is completely accurate in their characterization of *McIntosh's* impact. Some recent caselaw seems to indicate that *McIntosh* described three limited exceptions, as Speedway argues. *See, e.g., Key v. United States*, 2013 WL 1411217, at *5 (W.D. Ky. Apr. 8, 2013) (stating that *McIntosh* "described three circumstances where injuries are foreseeable – and thus where land possessors owe a duty to invitees despite the obviousness of a condition"); *Webb v. Dick's Sporting Goods*, 2011 WL 3362217, at *3 (Ky. Ct. App.) (interpreting *McIntosh* to mean that landowners have a duty to protect invitees when it is "foreseeable that the invitee might: be distracted, realize there is a danger but forget about that danger, or choose to ignore the danger because the benefit outweighs the risk"). Yet the language in some cases also focuses on foreseeability in more general terms. *See, e.g. Powers v. Tirupathi Hospitality, LLC*, 2011 WL 251001, at *5 (E.D. Ky. Jan. 26, 2011) (denying summary judgment to defendant because defendant "could have reasonably foreseen" that poor weather conditions and a failure to spread salt on the ground could lead to plaintiff falling on the ice and being injured). Still others appear to have construed *McIntosh* even more narrowly than either party in this case by primarily focusing on the language about the

14

plaintiff's possible distraction and its effects. *See True*, 358 S.W.3d at 28 (relying on *McIntosh* in order to affirm summary judgment in favor of the defendant mainly because there was no evidence that plaintiff was distracted from his own duty to act reasonably and ensure his own safety).

Regardless of whether the three examples discussed above are the only exceptions to the open and obvious doctrine, or whether they are simply three of many possible exceptions, the court in *McIntosh* distinctly emphasized the precise context of the facts in that case. According to the court, "[i]t is important to stress the context in which McIntosh sustained her injury: she was rushing a critically ill patient into a hospital, in an effort to save his life." *McIntosh*, 319 S.W.3d at 394. The court went on to say that the "dire need to rush critically ill patients through the emergency room entrance should be self-evident," thus giving the owner of the premises "reason to expect that the invitee will proceed to encounter the known or obvious danger" because the benefit of saving someone's life would outweigh the known risk. *Id*. The emergency situation in which it would be expected that paramedics would be distracted and/or choose to step over the curb despite the danger made McIntosh's injury in that case foreseeable. No such circumstances exist in Colyer's situation. Colyer was simply purchasing a 2-liter drink, she was not in a hurry, there was no emergency, and she has alleged no facts that would lead the Court to conclude she was distracted in any way.

Indeed, the majority of later Kentucky Court of Appeals cases interpreting *McIntosh* have focused their analysis on the three situations listed in *McIntosh*, or at least have closely compared the facts of the cases confronting them with the particular factual

context of *McIntosh*. *See, e.g. Roberts*, 2013 WL 5048294, at *5 (holding that *McIntosh* did not bar summary judgment in favor of defendant without evidence of plaintiff being distracted, forgetful, or having been pushed into the hazard, and finding that plaintiff's case was dissimilar to *McIntosh* since she was not in an emergency situation or in a hurry); *Spears*, 2013 WL 3480315, at *5 (finding that defendant had no reason to foresee plaintiff's injury because plaintiff was "not acting under time-sensitive or stressful circumstances," and plaintiff presented no evidence that she was distracted from her own "duty to act reasonably to ensure her own safety" which was heightened by her familiarity with the open and obvious danger); *Key*, 2013 WL 1411217, at *6 (affirming summary judgment in favor of defendant because plaintiff presented no evidence that she forgot about the danger previously encountered, or that she was distracted by some outside force, or that her view was obstructed, or that she was in a hurry and acting under stressful circumstances); *Moore*, 2012 WL 1886660, at *4 (finding that plaintiff did not meet the requirements of *McIntosh* in asserting a defense because she presented no evidence that she was "acting under circumstances that would have foreseeably distracted her" from the obvious condition of the slippery floor); *Lucas*, 343 S.W.3d at 346 (finding no disputed issues of material fact as to an open and obvious danger when plaintiff was "not distracted by some outside force," her view was not obstructed, and she "was not acting under time-sensitive or stressful circumstances"); *True v. Fath Bluegrass Manor Apt.*, 358 S.W. 3d 23, 28 (Ky. App. 2011) (affirming summary judgment in favor of defendant because "the exceptional circumstances of *McIntosh*" did not apply when plaintiff presented no evidence of any distraction that would cause him to forget the

16

obvious danger of a loose railing); *Shelton*, 2011 WL 2496182, at *3-4 (finding that plaintiff failed to demonstrate any issue of material fact as to defendant's duty because plaintiff was not acting under any stress or time constraints when she tripped, and that preoccupation with "normal activities" is not the same as a distraction great enough to make her forget about a known and obvious hazard).

Colyer's case fits within this line of cases because she was aware of the presence of the cardboard box, she was familiar with the situation since she had already walked around the box once, and she has conceded that her view of the box was not obstructed in any way. Colyer has not presented any evidence that she was distracted, that she was acting under stressful or time-sensitive circumstances, that she forgot about the presence of the box, or that there was any emergency involved with her purchase of a 2-liter of Mountain Dew. Colyer has not even attempted to argue that her situation fit into the examples (or exceptions) described in *McIntosh*, but simply asserts that it was foreseeable that she could be injured by tripping over the cardboard box. Moreover, Colyer has not cited any caselaw to support her position. Colyer's brief merely contradicts Speedway's interpretation of *McIntosh*, but does not refer to any other cases to show how her injury would have been foreseeable despite its obviousness.[7] The trial court is under no duty to "search the entire record to establish that it is bereft of a genuine issue of material fact," and "the nonmoving party has an affirmative duty to direct the

---

[7] The Court would have welcomed further discussion of the applicability of *McIntosh* to the particular facts of Colyer's case, but Colyer's counsel apparently did not think it necessary to conduct additional research on the matter or bring such research to the Court's attention. The Court notes that numerous cases have been decided since *McIntosh* that have interpreted it and applied it to a wide variety of premises liability claims, yet Colyer's counsel apparently felt no compulsion to attempt to argue how Colyer's case could fit into the existing framework of caselaw interpreting *McIntosh's* modified standard.

17

court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris,* 260 F.3d 654, 655 (6th Cir.2001).

Thus, absent some evidence that Colyer's injury was foreseeable, the Court would have to engage in speculation about hypothetical circumstances that could make Colyer's case analogous to the situation in *McIntosh*. Conclusory allegations and assertions that are unsupported, and even contradicted, by the record will not survive a motion for summary judgment. *See Matsushitu*, 475 U.S. 587. Even if Colyer's case were submitted to a jury at trial, she would still be required to present evidence that her injury was foreseeable. *Anderson*, 477 U.S. at 252; *see also Lewis*, 343 S.W.3d at 436 (finding that assertions unsupported by affirmative evidence in the record "are merely unsupported claims" which cannot defeat a motion for summary judgment); *Key*, 2013 WL 1411217, at *5-6. Here, Colyer has not met her burden of presenting "at least some affirmative evidence showing that there is a genuine issue of material fact for trial," and the Court must grant summary judgment to Speedway. *Lewis*, 343 S.W.3d at 436.

**3**

Finally, Colyer has also requested punitive damages. It appears that Colyer has conceded this point, [*see* R. 19 at 9 (stating that "in all condor [sic] its [sic] appears that punitive damages are not applicable")], but the Court nevertheless will address the matter for the sake of clarifying the record. Punitive damages are only recoverable in Kentucky if the plaintiff can show that the defendant failed to exercise reasonable care, that he was ultimately negligent, and also that the defendant exhibited wanton or reckless disregard for others through his conduct. *City of Middlesboro v. Brown*, 63 S.W.3d 179, 181 (Ky.

2002) (quoting *Horton v. Union Light, Heat & Power Co.*, 690 S.W.2d 382, 389-90 (Ky. 1985)). The plaintiff must establish the reckless or wanton disregard for others by clear and convincing evidence. *Embry v. Geo*, 478 F. Supp. 2d 914, 920 (E.D. Ky. 2007).

Colyer has not alleged any facts that would support a finding that Speedway acted wantonly or with recklessness. The only argument that Coyer has presented as to why she is entitled to punitive damages is that having boxes on the floor of the store could constitute "wanton and reckless disregard for customer safety." [R. 19 at 8.] Unpacking boxes in order to re-stock the shelves in a store is hardly egregious behavior that would warrant punitive damages. Colyer also has not alleged that Speedway acted with an "evil motive" or an intent to harm anyone. *See Horton*, 690 S.W.2d at 389 (specifying that punitive damages in tort claims should be reserved for misconduct that is "outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others"). Therefore, the Court finds that punitive damages are inappropriate in this case, and denies the Plaintiff's request for them.

### III

In conclusion, Colyer has not presented any evidence to support that Speedway owed a heightened duty to warn or otherwise protect Colyer from the cardboard box, which was an open and obvious condition. Nor has Colyer presented any evidence to show that her injury was foreseeable, despite the obviousness of the box. Moreover, even if Colyer had met her burden on the elements of duty and breach, she has not submitted evidence, or even any arguments, concerning causation or injury. The Court therefore finds that Ms. Colyer has not demonstrated that there is a genuine issue of material fact

concerning the elements of her negligence claim. *See Celotex Corp.*, 477 U.S. at 325.

Accordingly, and the Court being sufficiently advised, it is **HEREBY**

**ORDERED:**

(1) Speedway's Motion for Summary Judgment [**R. 17**] is **GRANTED**; and

(2) The Court will enter an appropriate Judgment contemporaneously herewith.

(3) Consequently, the final pre-trial conference in this case scheduled for Monday, November 25, 2013, and the jury trial scheduled for Monday, December 9, 2013, are hereby **CANCELLED**.

This 8th day of November, 2013.

Signed By:
*Gregory F. Van Tatenhove*
United States District Judge